UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JAMAL JOHNSON                      CIVIL ACTION NO.  6:22-CV-00071

VERSUS                             JUDGE DAVID C. JOSEPH

COMMISSIONER OF SOCIAL             MAGISTRATE JUDGE DAVID J. AYO
SECURITY

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. The Court has considered the administrative record, the briefs of the parties, and the applicable law, and recommends that the Commissioner's decision be vacated and remanded to the Commissioner for further proceedings consistent with the views expressed herein.

## Administrative Proceedings

Claimant, Jamal Johnson, fully exhausted his administrative remedies before filing this action in federal court. He filed an application for disability insurance benefits and an application for supplemental security income benefits on May 4, 2018, alleging disability beginning on September 1, 2009.  (Rec. Doc. 10-1, p. 236).  His application was denied on October 11, 2018. (Rec. Doc. 10-1, p. 118). He then requested a hearing, which was delayed due to the national emergency declared in response to the COVID-19 pandemic and delayed again at the Claimant's request due to ongoing kidney issues. (Rec. Doc. 10-1, pp. 173, 192).  On March 2, 2021, a hearing was held by telephone due to the "extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) pandemic" before Administrative Law Judge Laura Roberts.

(Rec. Doc. 10-1, p. 32 *et seq*).  During the hearing Claimant amended his alleged onset of disability date to November 30, 2016. (Rec. Doc. 10-1, pp. 14, 38-39[1], 341).  The ALJ issued a decision on May 25, 2021, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date of November 30, 2016, through the date of the decision on May 25, 2021. (Rec. Doc. 10-1, pp.14-27).  Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 10-1, p. 5). Therefore, the ALJ's decision became the Commissioner's final decision for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on June 27, 1984.  He was 32 years old on the alleged amended disability onset date and 36 years old at the time of the ALJ's decision. He has a high school diploma, and his work history includes employment as a rigger in the marine industry, as a short order cook, in phone sales, and as a technician. (Rec. Doc. 10-1, pp. 286, 297). He alleged that he has been disabled since November 30, 2016 (as amended), due to a back injury and chronic asthma issues. (Rec. Doc. 10-1, p. 341).

In 2012, Claimant, who was unrepresented by counsel at the time, filed for Social Security benefits alleging disability following a 2010 automobile accident.  On August 14, 2014, the ALJ found Claimant had severe impairments of lumbar disc

---

[1] While Claimant's brief in anticipation of the hearing and the ALJ's decision state that the amended onset of disability is November 30, 2016, the hearing transcript states that the date is November 30, 2015.  The transcript refers to the brief and thus, the Court assumes that Claimant's counsel misspoke at the hearing.

disease and asthma, but that he retained the ability to perform sedentary work.  The ALJ further found Claimant "not disabled" and denied disability insurance benefits as well as supplemental security income.  (Rec. Doc. 10-1, pp. 76-85).  Claimant did not appeal this decision but filed a second application for benefits which is the basis of this matter on May 4, 2018.

The pertinent record reveals the following history:

**I.    Claimant's Medical Records:**

A. Before 2018 Surgery

    1.  University Hospital & Clinics ("UHC") (Rec. Doc. 10-1, pp. 345-360):
- April 30, 2015 - Claimant sought treatment at UHC.  He reported that he was unable to continue treatment and monitoring for lumbar stenosis at Lafayette Bone and Joint Clinic ("LBJC") because he lost his health insurance.  LBJC had prescribed Norco and prescription strength Motrin for his neck and back pain.  UHC prescribed pain medication.  An MRI of the spine showed neural foraminal stenosis at L5 and S1 and he was referred to neurosurgery at LSU Shreveport.
- May 26, 2015, September 1, 2015, and December 22, 2015 - Claimant was prescribed Tramadol and Meloxicam for back pain.  He reported that he had an appointment with the LSU neurosurgery clinician on September 29, 2015, and that they requested further imaging.
- January 17, 2017 - Claimant was prescribed Tramadol and Meloxicam. An additional MRI was ordered to comply with neurosurgery's request. (The records indicate that he missed an appointment on July 14, 2016.)

    2.  Iberia Comprehensive Community Health Center ("ICCHC"):
- August 11, 2016 - Claimant sought treatment for back pain and asthma and a referral to LBJC for back pain. He was prescribed Percocet (acetaminophen and oxycodone) and ibuprofen for back pain. (Rec. Doc. 10-1, pp. 443-445).
- October 4, 2017 - Claimant complained of neck and back pain and was prescribed Percocet and acetaminophen with codeine for pain, steroids, and muscle relaxers. (Rec. Doc. 10-1, pp. 441-443).

    3.  LBJC:

- <u>January 31, 2018</u> - Claimant sought treatment for low back pain describing the pain as "sharp, dull, deep, crampy, aching, burning, shooting, stabbing, throbbing, tingling, and numbness" and claiming that his pain level was a 9/10 and that he had functional limitations including general activity, mood, activities of daily living and sleep. Dr. Daniel Hodges noted moderate tenderness to palpation in the lumbar spine and tender facet joints, bilateral sacroiliac tenderness, limited range of motion in the lumbar due to spine, and impaired heel-toe and tandem walking. He continued the prescription for Norco for pain and included a prescription for muscle relaxers. (Rec. Doc 10-1, pp. 433-435).
- <u>May 10, 2018</u> - Claimant returned to LBJC for low back pain describing his pain as he had on January 31, 2018, but at an 8/10 level. On examination, Dr. Hodges' findings were the same as at the previous appointment. He noted that an MRI study of the lumbar spine revealed slight degeneration of the L4-5 consistent with grade 1 spondylolisthesis and that Claimant was recommended for surgery at LSU in Shreveport. He issued a WORK STATUS REPORT that Claimant was not to work more than 15 hours per week due to his low back pain. (Rec. Doc. 10-1, pp. 436-439).

4. <u>Pavy Clinic including Gastroenterologist Dr. Luis Alvarez</u>:
- <u>March13, 2018, March 14, 2018, March 19, 2018, May 1, 2018, June 5, 2018, June 18, 2018</u> - Claimant was seen and treated for pain, gastritis, and kidney stones.

B. <u>Surgery - University Health Shreveport</u>:
- <u>August 10, 2018</u> - <u>Neurosurgery and History Physical</u> - Claimant reported chronic pain in his back radiating into his legs, the right more than the left traveling in a possible S1 distribution. On examination, the claimant moved his extremities well had no drift motor function was full and equal with full strength and had grossly intact sensation to light touch. He was diagnosed with Lumbar Stenosis to the L4-L5. (Rec. Doc. 10-1, pp. 475-479).
- <u>August 11, 2018</u> - <u>Laminectomy of L4-L5 with fusion and instrument</u> - Post-operative notes state that he tolerated the procedure well and post-operative X-rays showed proper hardware placement and no malalignment. (Rec. Doc. 10-1, pp. 479-484).
- <u>September 11, 2018</u> - <u>Post-Operative Exam</u> - Claimant complained of continued pain in the low back and was using a rolling walker for ambulation. He reported that he planned to file for disability since he had been an oilfield worker and could not continue that work but was encouraged to increase activity as tolerated, consider physical therapy, and potential job retraining due to his young age. (Rec. Doc.

10-1, pp. 501-502).

C. <u>Post Surgery</u>
   1. <u>Bayou Region Family Practice</u>:
- <u>September 14, 2018</u> - Claimant was referred after surgery for pain management due to back pain. He was referred to physical therapy and prescribed Neurontin and breathing treatments of albuterol. (Rec. Doc. 10-1, pp. 505-508).

   2. <u>Primary Care Physician Dr. Edison Ong (November 2019 - March 2020)</u>:
- <u>November 26, 2019</u> - Claimant sought treatment for backpain after provider with Dr. Pavy left. Dr. Ong assessed him with lumbar post laminectomy syndrome and noted pain was present. He prescribed Norco, a lidocaine patch, and other medications. Claimant stated that he would try to find insurance that Dr. Fairbanks would accept so that he could be referred to him. Dr. Ong planned to get Claimant's records from Shreveport. (Rec. Doc. 10-1, pp. 524-526).
- <u>January 27, 2020</u> - Claimant sought treatment for depression, sinusitis, and back pain. He stated that he feels depressed that he "cannot go back to work especially after being told it would be better after the surgery" and, after screening, Dr. Ong diagnosed him with severe depression. On examination of his back, Dr. Ong noted scoliosis to the left; and straightening of the lumbar lordosis pain located on the midline waistline aggravated by extension. Dr. Ong also noted a swollen ankle. Claimant was unable to change his insurance so that Dr. Fairbanks would treat him. Dr. Ong prescribed Norco for his back pain and other medications. One of the Procedure Codes states: "1125F AMNT PAIN NOTED PAIN PRSNT." (Rec. Doc. 10-1, pp. 527-530).
- <u>February 26, 2020</u> - Claimant reported that his foot was better but that his back pain remained the same. Dr. Ong's findings from the examination of his back remained the same and he again prescribed Norco for his back pain and other medications. One of the Procedure Codes again states: "1125F AMNT PAIN NOTED PAIN PRSNT." (Rec. Doc. 10-1, pp. 535-538).
- <u>March 26, 2020</u> - Dr. Ong's findings from the examination of his back remained the same and he again prescribed Norco for back pain, asthma inhalers, and other medications. He noted that Claimant reported going to the emergency room at Lafayette General Medical Center for low back pain two weeks before and been given a Toradol shot and pain medications which Claimant denied filling. One of the Procedure Codes again states: "1125F AMNT PAIN NOTED PAIN PRSNT." (Rec. Doc. 10-1, pp. 540-543).
- <u>May 22, 2020</u> - Claimant reported low back pain. Dr. Ong again found post laminectomy syndrome which responds to pain medication. He

prescribed Norco for pain and other medications for a variety of conditions. One of the Procedure Codes again states: "1125F AMNT PAIN NOTED PAIN PRSNT." (Rec. Doc. 10-1, pp. 664-669). He prescribed Narcan Liquid for "[l]ong term current use of opiate analgesic" in case of an opioid overdose. (Rec. Doc. 10-1, p. 664 ¶7.)

- <u>June 22, 2020</u> - Dr. Ong's findings from the examination of Claimant's back remained the same and he again prescribed Norco for back pain, asthma inhalers, and other medications. One of the Procedure Codes again states: "1125F AMNT PAIN NOTED PAIN PRSNT." (Rec. Doc. 10-1, pp. 670-673).

- <u>July 21, 2020</u> - Dr. Ong noted Claimant's depression and that he had received Morphine for "low back pain near rib unresponsive to Norco." Otherwise, pertinent findings and prescriptions were same as June 2020 including code 1125F. (Rec. Doc. 10-1, 674-679).

- <u>August 21, 2020</u> - Dr. Ong noted Claimant's depression, and bipolar disorder. He also noted that Claimant returned to the emergency room on August 13, 2020, that his kidney stone was "moving but not totally blocked up" and that he had continual pain on and off on the "left upper flank to the upper left back." He also noted "[d]isplacement of internal fixation device of vertebrae, sequela." Otherwise, pertinent findings and prescriptions were same as July 2020 including code 1125F. (Rec. Doc. 10-1, 680-685).

- <u>September 21, 2020</u> - Dr. Ong noted Claimant had passed two kidney stones, had been to the emergency room twice, and that another CT scan would be performed in January 2021. Otherwise, pertinent findings and prescriptions were the same including code 1125F. (Rec. Doc. 10-1, 686-689).

- <u>October 22, 2020</u> - Dr. Ong noted that an X-ray of the lumbar spine "showed development of scoliosis and loosening of the pedicle screws" and that Claimant would talk with Shreveport regarding this "new development." Otherwise, pertinent findings and prescriptions were the same including code 1125F. (Rec. Doc. 10-1, 690-694).

- <u>November 23, 2020</u> - Claimant retuned to Dr. Ong with pain in lower and right side of the back. Dr. Ong noted that Claimant had gone to the emergency room at IMC in the previous month for severe pain. Dr. Ong referred him to a specialist for his back pain and urged him to talk with the doctors in Shreveport regarding the "development of scoliosis and loosening of the pedicle screws." Otherwise, Otherwise, pertinent findings and prescriptions were the same including code 1125F. (Rec. Doc. 10-1, 686-689).

- <u>December 22, 2020</u> - Dr. Ong noted Claimant's continual back pain and that the pain specialist Dr. Brandon Hicks required patients to see a bone doctor in their group to be referred to him. Otherwise, pertinent findings and prescriptions were the same including code

1125F. (Rec. Doc. 10-1, 718-722).

- <u>January 28, 2021</u> - Dr. Ong again noted Claimant's continual back pain and that the pain specialist Dr. Brandon Hicks required patients to see a bone doctor in their group before being referred to him. Otherwise, pertinent findings and prescriptions were the same including code 1125F. (Rec. Doc. 10-1, 723-728).
- <u>February 28, 2021</u> - Pain, pertinent findings and prescriptions were the same including code 1125F. (Rec. Doc. 10-1, 729-735).

5. <u>Iberia Medical Center ("IMC")</u>:

- <u>April 21, 2020</u> - Claimant went to the emergency room for back pain after he went to "pick something up" and "felt like I was stuck there." He described it as a different pain than he experienced with his kidney stones and stated that the pain was radiating to his legs at a level 10. The clinical expression of his pain was noted as "stressed, tense expression." He was treated with Toradol, Norflex and Decadron. The report notes that he "appears to be in pain" but that after treatment he ambulated out of the emergency room without difficulty. (Rec. Doc. 10-1, 549-555).
- <u>June 14, 2020</u> - Claimant returned to the emergency room for "acute exacerbation of his chronic low back pain for approximately a week and a half" and reported that his pain was at a level 10. He also complained of neck pain. He was again treated with Toradol, Norflex, and Decadron and additionally given Skelaxin. He was diagnosed with "acute with chronic low back pain." (Rec. Doc. 10-1, 563 - 569).
- <u>July 14, 2020</u> - Claimant returned to emergency room for "severe flank pain and nausea" and stated that the pain was worse than his low back pain. A CT scan was performed. He was diagnosed with a kidney stone and treated with Toradol, Zofran, and Morphine and prescribed Norco, Ketorolac, Flomax, and other medications. (Rec. Doc. 10-1, pp. 576-603).
- <u>August 13, 2020</u> - Claimant returned to emergency room for sharp abdominal or lower quadrant pain and described it as a level 10. He also reported that he had a telemedicine appointment with Dr. Andre Broussard regarding his kidney stone. After consultation with Dr. Broussard, the emergency room doctor diagnosed Claimant with a kidney stone. He prescribed Ketorolac, Flomax, and Tramadol. (Rec. Doc. 10-1, 604-614).
- <u>August 25, 2020</u> - Claimant returned to emergency room for kidney stone. A clinical expression of pain was noted as "stabbing left flank pain at a level 10. An emergency CT scan was performed, and Claimant was given the same diagnosis and treatment as above. Percocet was added to his medication list. (Rec. Doc. 10-1, 615-631).

- <u>September 1, 2020</u> - Claimant returned to emergency room complaining of pain. A clinical expression of pain was noted as "stressed, tense expression." The emergency room doctor consulted with Dr. Broussard who agreed that surgery was in order since Claimant had not passed the kidney stone. Claimant was given and prescribed the same medications. (Rec. Doc. 10-1, 639-650).
- <u>September 14, 2020</u> - Claimant had telehealth visit with Dr. Rana El Sabbagh as a follow-up from the emergency room regarding his kidney stones. The patient history described him as "known to have bipolar disorder and a history of kidney stones." (Rec. Doc. 10-1, pp. 696-699).
- <u>October 14, 2020</u> - Claimant returned to the emergency room complaining of low back pain at a level 10/10 and constipation. On examination, the claimant was ambulatory with a stable gait. A CT scan of Claimant's lumbar spine revealed slight lumbar levoscoliosis with lucency surrounding pedicle screws consistent with loosening. He was administered Norflex (Ketorolac) and Toradol. (Rec. Doc. 10-1, pp. 651-669).
- <u>November 24, 2020</u> - Follow-up in person appointment with Dr. Sabbagh for kidney issues. (Rec. Doc. 10-1, pp. 700-703).
- <u>February 23, 2021</u> - Follow-up telemedicine appointment with Dr. Sabbagh for kidney issues. (Rec. Doc. 10-1, pp. 704-707).

## II.    <u>State Medical Examiner - October 1, 2018 (7 ½ weeks post-surgery):</u>

The state agency medical expert Dr. Louis Hargus evaluated Claimant for his allegations of back injury and asthma and for his symptoms of pain, shortness of breath and difficulty following instructions and handling stress. He assessed Claimant's residual functional capacity ("RFC") for two different periods. Regarding April 2015 to the end of 2017, he found that there were intermittent doctor visits, but insufficient medical evidence of record to evaluate "Continuous Functional Capacity." (Rec. Doc. 10-1, p. 95). Regarding January 2018 to January 2019, he assessed Claimant's capacity for "Light Work" and stated:

> THIS RFC IS ASSESSED FOR ANTICIPATED FUNCTIONAL STATUS 1/2019, 1 YEAR AFTER MER

WAS    DEEMED    ADEQUATE    FOR    ONGOING
FUNCTIONAL EVALUATION.

(Rec. Doc. 10-1, p. 93).

Dr. Hargus noted that Claimant's 2018 clinical exams documented impaired walking, pain on Straight Leg Raise, and limited range of motion.  He also noted the spine fusion operation in August 2018, persistent back pain, use of a rolling walker, and referral to pain management in the month prior to his assessment. (Rec. Doc. 10-1, pp. 106, 107).  Dr. Hargus found improvement in Claimant's condition following surgery and that the Claimant's "statements regarding the severity of his impairments were partially consistent with the overall physical evidence in the file but that he was not disabled because he could perform other work." (Rec. Doc. 10-1, pp. 112, 113).  These findings were approved by Ashley Johnson, the Disability Adjudicator/ Examiner.

### III.    <u>Testimony at telephone hearing before the ALJ on March 22, 2021</u>

Claimant testified that he has pain in his lower back that goes into his legs and is constant when lying or sitting down.  He further stated he can only sit, stand, or walk for about 10 or 15 minutes at a time, that he can only lift 10 pounds and that he drops things all the time.  He said that he takes medication for pain, cholesterol blood pressure, kidneys, and asthma and that the medication helps sometimes.  He also testified that he uses a walker (which was prescribed after surgery) about three times a week and that sometimes he cannot get out of bed at all.  (Rec. Doc. 10-1, pp. 44, 48, 54, 55).

Claimant further reported that he had back surgery in Shreveport because that is where the Medicaid patients must go for back surgery. He testified that an X-ray performed in October of 2020 shows loosening of the screws at the fusion and that he has been told that he needs another surgery because of this. As a result, he has been trying without success to get an appointment with the doctor in Shreveport. In the meantime, his mother is helping to care for his daily needs. In addition, he has been taking Norco 10 three to four times a day for pain for several years because he cannot take aspirin or ibuprofen which effects his kidneys. He does not think the Norco interferes with his thinking, but he admits that Dr. Ong may have a different opinion. (Rec. Doc. 10-1. pp. 52-65).

Vocational Expert Marsha Storozyszyn found that while Claimant could not perform his past work, there were jobs in the economy that a hypothetical person with the same age and skills as Claimant with a residual functional capacity to perform light work could perform.[2]  (Rec. Doc. 10-1, pp. 68-70). When asked to quantify the effect a steady and ongoing use of opiates would have on the jobs available to Claimant, Storozyszyn stated that "the use of opiates affects people individually so I would not be able to discern this particular claimant or give a generality." (Rec. Doc. 10-1, p. 70,71). With respect to missed work, she stated that if the hypothetical person would be unable to go to work or complete a workday two

---

[2] The hypothetical also contained the exceptions: "The claimant cannot climb ropes, ladders, or scaffolds; crouch; and crawl. The claimant can occasionally climb ramps or stairs; stoop; kneel; and balance on uneven, moving, or narrow surfaces. The claimant cannot perform work activities involving any exposure to extreme hot temperatures (over 90 degrees), extreme cold temperatures (under 30 degrees), or excessive humidity (over 80%). Finally, the claimant can have occasional exposure to dust, fumes, odors, gases, and other pulmonary irritants."

days a month due to the exacerbation of pain, the person would not be able to sustain

employment in the types of jobs described at either the light or sedentary level. (Rec.

Doc. 10-1, p. 71).

The ALJ found Claimant was not disabled. Claimant now seeks reversal of the

Commissioner's adverse ruling.

## Discussion

### A.    Standard of Review

This court's standard of review is (1) whether the final decision is supported by

substantial evidence, and (2) whether the Commissioner applied the proper legal

standards to evaluate the evidence. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021)

(citation omitted). The Supreme Court has emphasized that:

> [t]he phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means— and means only— "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (internal citations omitted).  The

reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute

its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994).  Despite this court's limited function, it must scrutinize the record in

its entirety to determine the reasonableness of the decision reached and whether

substantial evidence supports it. *Joubert v. Astrue*, 287 F. App'x 380, 382 (5th

Cir.2008) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Upon finding substantial evidence, the court may only review whether the Commissioner has applied proper legal standards and conducted the proceedings consistently with the statute and regulations. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983). In other words, where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed – unless the Commissioner applied an incorrect legal standard that materially influenced the decision. *See* 42 U.S.C. § 405; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the Claimant's subjective evidence of pain and disability, and (4) the Claimant's age, education, and work experience. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

**B.    Entitlement to Benefits**

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). *See also Smith v. Berryhill*, 139 S. Ct. 1865, 1772 (2019). Supplemental Security Income ("SSI") provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). *See also Smith v. Berryhill*, *supra*. A person is disabled "if he is unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

C.    **Evaluation Process**

1.    Burden of Proof

A claimant is "disabled" as defined in the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still  do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

"The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step*." Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d at 461; *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### 2. Residual Functional Capacity

The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  A residual functional capacity assessment "is a determination of the most the claimant can still do despite

his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)).  In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.  *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).  The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.  *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

### 3.  Pain

The Court recognizes that pain can constitute a disabling impairment, but only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).   Subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).   While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir.

1989).  The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain does not take precedence over conflicting medical evidence. *Id*.

The ALJ's decision regarding the actual extent of claimant's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence. *Wren v. Sullivan*, 925 F.2d at 128.  Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d at 163; *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); (2) medication the claimant takes for pain; *Anthony v. Sullivan*, *supra*; *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa*, *supra*; *Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995); (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa*, *supra*; and (5) external manifestations of debilitating pain such as marked weight loss. *Falco*, *supra*; *see also* 20 C.F.R.§§ 404.1529(c)(3)(i)-(vii).[3]

D.    **The ALJ's Findings and Conclusions**

---

[3] "Factors relevant to your symptoms, such as pain, which we will consider include:
(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

The ALJ made the following findings:

- At step one, that Claimant has not engaged in substantial gainful activity from his alleged onset date of November 30, 2016, through his date last insured, September 30, 2021. (Rec. Doc. 10-1, pp. 16, 17). This is supported by substantial evidence in the record.

- At step two, that Claimant has the following severe impairments: chronic kidney disease; Post-Laminectomy Syndrome; Bilateral Nephrolithiasis; and Obesity (20 CFR 404.1520(c) and 416.920(c)). (Rec. Doc. 10-1, p. 17). This finding is supported by substantial evidence in the record.

- At step three, that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 10-1, pp. 18, 19). Claimant does not challenge this finding.

- The ALJ next found that through the date last insured, Claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that Claimant cannot climb ropes, ladders, or scaffolds; crouch; and crawl. Claimant can occasionally climb ramps or stairs; stoop; kneel; and balance on uneven, moving, or narrow surfaces. Claimant cannot perform work activities involving any exposure to extreme hot temperatures (over 90 degrees), extreme cold temperatures (under 30 degrees), or excessive humidity (over 80%).

Finally, Claimant can have occasional exposure to dust, fumes, odors, gases, and other pulmonary irritants. (Rec. Doc. 10-1, p. 19). Claimant challenges this finding.

- At step four, the ALJ found Claimant is unable to perform past relevant work. (Rec. Doc. 10-1, p. 22). Claimant does not challenge this finding.

- At step five, the ALJ found Claimant is capable of performing certain jobs which exist in significant numbers in the national economy. (Rec. Doc. 10-1, p. 25). Claimant challenges this finding to the extent he challenges the ALJ's RFC finding.

The ALJ found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, that the Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record." (Rec. Doc. 10-1, p. 20).

In particular, the ALJ found that although Claimant used a rolling walker a month after spinal surgery in 2018, "he appears to have improved significantly since that time as would be expected." (Rec. Doc. 10-1, p. 24). He further found that since that time Claimant has been able to successfully ambulate without needing a walker and was described as having independent ambulation and a strong gait. Further, he found:

> [C]laimant's objective findings have been mostly normal consistent with light work. The [C]laimant's lumbar impairment with obesity supports the postural limitations, while the [C]laimant's asthma do[es] support pulmonary

> limitations. However, Claimant's ongoing daily smoking supports the [C]laimant not being any more limited than outlined in the [C]laimant's residual functional capacity.

(Rec. Doc. 10-1, p. 24).

The ALJ further found Dr. Daniel Hodges' opinion that Claimant would be limited to working only 15 hours per week due to low back pain unpersuasive because "there is now reasoning provided as to why the [C]laimant is limited to 15 hours per week as opposed to working more hours with light duty limitations." (Rec. Doc. 10-1, p. 24).

> Updated records indicate the claimant's lumbar fusion has improved the claimant's lumbar condition showing significantly reduced issues from the claimant's lumbar spine. Therefore, the undersigned finds the claimant would have physical limitations (to the light level), and then would not require reduced hours working during the work week.

(Rec. Doc. 10-1, p. 24).

The ALJ further found the findings and opinions of the state agency medical consultants, who found that Claimant was limited to light work with limitations from postural and pulmonary irritants, persuasive and consistent with the evidence of record. The ALJ stated that "state agency medical consultants had the opportunity to review the claimant's longitudinal medical evidence" and "are educated in the rules and regulations of the Social Security Administration." (Rec. Doc. 10-1, p. 24). Accordingly, the ALJ found that the above residual functional capacity assessment, is supported by Claimant's mostly normal objective findings; the improved functioning since Claimant's lumbar surgery; and the evidence of record as a whole.

(Rec. Doc. 10-1, p. 24).

 **E.** **Claimant's Allegations of Error**

 Claimant asserts three assignments of error:

 1. The ALJ Decision is factually and legally erroneous and applies an improper legal standard concerning the establishment of a period of disability.

 2. The ALJ Decision regarding the establishment of a period of disability is not supported by "substantial evidence."

 3. The entirety of the Decision is rendered invalid by the flawed analysis of the establishment of a period of disability.

## Analysis

 The Court construes Claimant's allegation that the establishment of a period of disability is not supported by "substantial evidence" as a general allegation that the ALJ's findings are not supported by "substantial evidence" and will address this issue first.

 As discussed above, despite this Court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. *Joubert v. Astrue*, 287 F. App'x 380, 382 (5th Cir. 2008). In doing so the Court finds the following significant:

 1. Date of Evaluation by State Examiners

  The ALJ found the October 1, 2018 opinion of the state examiners persuasive. Dr. Louis Hargus and Ashley Johnson evaluated Claimant's records and found him capable of "light work" with limitations from

postural and pulmonary irritants on October 1, 2018, three weeks after his surgery. The ALJ further found Dr. Hodges' finding in May of 2018 that Claimant was unable to work more than 15 hours a week "unpersuasive" because "lumbar fusion has improved the claimant's lumbar condition showing significantly reduced issues from the claimant's lumbar spine." (Rec. Doc. 10-1, p. 24). The bulk of Claimant's medical records document doctors' appointments, emergency room appointments, continued use of opioid analgesic medication for pain, and findings that the hardware in his back had loosened occurred after the state agency's opinion. There are no other assessments by state examiners after October 2018.

2. <u>Lack of In-Person Observation by ALJ</u>

Due to the extraordinary circumstances associated with the COVID-19 Pandemic, the hearing before the ALJ was held by phone almost three years after Claimant filed his application for benefits. While the Court is aware of the need for telephone hearings and that Claimant agreed to the telephone hearing, the Court is also aware that certain things cannot be seen and, therefore, assessed over the telephone. In this instance, the Commissioner argues that "Claimant's one time use of a walker appeared to be volitional," because he used it on his September 11, 2018, appointment, but that on several occasions it was noted that he "maintained a normal/steady gait and there was no mention of an assistive device." (Rec. Doc. 13, p. 6). In contrast, Claimant testified that the walker

was prescribed after surgery and that he uses it "three times a week" because at other times he cannot "even stand straight." (Rec. Doc. 10-1, p. 56). As stated above, the ALJ found "Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record." While it is in the province of the ALJ to determine credibility, in this instance an in-person observation of Claimant would shed light on this discrepancy.

3. <u>Effect of Opiates on Claimant's Ability to Work</u>

As stated above, Marsha Storozyszyn, the Vocational Expert, was unable to determine the effect steady and ongoing use of opiates would have on the jobs available to Claimant. (Rec. Doc. 10-1, p. 70,71). The Claimant testified that the medication did not affect him but that Dr. Ong may disagree with that statement. (Rec. Doc. 10-1, p. 65). It is clear from the medical records that Claimant has been prescribed and has apparently been taking opiates for several years.

4. <u>Evidence of Loosening of Lumbar Screws</u>

As stated above, the ALJ found Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms not entirely consistent with the medical evidence and other evidence in the record. The ALJ noted the loosening of the lumbar screws, and that Claimant is trying to get an appointment with his Doctor in Shreveport. He also noted that a

CT scan revealed "lucency surrounding pedicle screws consistent with loosening." (Rec. Doc. 10-1, p. 20, 22).[4] Claimant testified that Dr. Ong has told him he needs another surgery because of the loosening of the screws and that he has been trying to get an appointment. (Rec. Doc. 10-1, p. 56). The ALJ does not address whether the loosening of the lumbar screws could be contributing to and/or causing Claimant's back pain.[5]

As stated above, in May 2018, Dr. Hodge, an examining physician, concluded that Claimant could not work more than 15 hours a day. On October 1, 2018, approximately seven and a half weeks after surgery, the state examiner, Dr. Hargus, a non-examining physician, concluded that updated records indicated Claimant's lumbar fusion improved Claimant's lumbar condition showing significantly reduced issues from Claimant's lumbar spine and that Claimant could perform "light work." The ALJ found Dr. Hargus' opinion persuasive. There is nothing in the record since then regarding Claimant's impairments and their effects upon his ability to perform work-related activities for the relevant period.

The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy his duty, his decision is not substantially justified. *Id*. Reversal of his decision, however, is appropriate only if the applicant shows that he was prejudiced. *Id*. The record contains ample evidence of Claimant's back problems including evidence that

---

[4] See also medical records particularly of IMC in August of 2020 and of Dr. Ong from August 2020 to November 2020 summarized above.
[5] The medical records suggest the findings that the screws were loosening occurred when a CT scan was performed in response to his kidney stones.

the screws used in his lumbar fusion are loosening.  It also includes a vast amount of evidence that Claimant sought treatment for pain, was prescribed opiate analgesics, and continuously used this medication three to four times a day.  The ALJ found that the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence.  The ALJ did not observe Claimant, did not request an updated medical evaluation by the state examiner, a medical source statement from Claimant's treating physician, or a consultative examination regarding (1) the effect of the opiate analgesics on Claimant's ability to work, (2) whether the loosening screws and recommended surgery could cause the pain Claimant attests to, and/or effect his ability to work.

In sum, on the present record, the Court is constrained to find that the ALJ's residual functioning capacity is not supported by substantial evidence.  Because the foundation for the ALJ's step four and alternative step five decision was premised upon a residual functioning capacity that is not supported by substantial evidence, the Court further finds that the ALJ's ultimate conclusion that Claimant is not disabled is likewise not supported by substantial evidence.

## **Conclusion and Recommendation**

For the reasons fully discussed above, this Court recommends that the Commissioner's decision be reversed and remanded for additional proceedings. In these additional proceedings, the evidence regarding the loosening of Claimant's lumbar screws and its impact on Claimant's ability to work and pain should be considered, Claimant's subjective complaints of pain should be reevaluated, and a

report regarding the impact of Claimant's condition upon his ability to work should be obtained from a treating physician and should be reviewed before a determination of Claimant's eligibility for disability benefits is determined.

* * * * *

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[6]

Signed at Lafayette, Louisiana on this 29th day of August, 2023.

_____
DAVID J. AYO
UNITED STATES MAGISTRATE JUDGE

---

[6] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).